**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br><br>*Plaintiff*,<br><br>v.<br><br>SUIRUI GROUP CO., LTD.<br>Building 19, North Olympic Science and<br>Technology Park<br>No. 1 Baosheng South Road, Haidian<br>District<br>Beijing, China<br><br>SUIRUI INTERNATIONAL CO., LTD.<br>1318-19 Hollywood Plaza<br>610 Nathan Road, Mongkok<br>Kowloon, Hong Kong (Special<br>Administrative Region), China<br><br>JUPITER SYSTEMS, INC.<br>31015 Huntwood Avenue<br>Hayward, California 94544<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT** |

**INTRODUCTION**

1.      The United States has long recognized that foreign investments in the

United States can implicate national security concerns.  *See* National Security Foreign

Investment Reform and Strengthened Transparency Act of 2007, H. Rept. No. 110-24.

(2007).  To address concerns with such investments, Congress enacted Section 721(d)(1)

of the Defense Production Act of 1950.  That statute authorizes the President to "take

such action for such time as the President considers appropriate to suspend or prohibit

any covered transaction that threatens to impair the national security of the United

States."  50 U.S.C. § 4565(d)(1).

2.	This civil action seeks enforcement of a presidential order made under that

authority.  The purchasers in the transaction were Defendants Suirui Group Co., Ltd. and

Suirui International Co. (collectively "Suirui").  Suirui acquired Defendant Jupiter

Systems, which provides video communications hardware and software to commercial

and U.S. Government customers.

3.	 After extensive interactions between the interagency Committee on

Foreign Investment in the United States and Defendants to address the national security

risks posed by that transaction, the President issued an order on July 8, 2025, finding that

the acquisition "threatens to impair the national security of the United States."  *Regarding*

*the Acquisition of Jupiter Systems, LLC by Suirui International, Co., Limited*, 90 Fed.

Reg. 31,125 (July 11, 2025).

4.	The President's Order prohibited the acquisition and directed Suirui and

its affiliates to divest all equity and assets, both tangible and intangible, in Jupiter

Systems within 120 days.  *Id.* § 2(a), (b).  At the request of Defendants, CFIUS,

exercising its discretion under the Order, subsequently extended the deadline twice, until

February 3, 2026.

5.	As of this filing, Defendants still have not complied with their obligations,

including divestment, under the Order.  The United States accordingly seeks enforcement

of the President's Order including compelled divestiture of Defendant Suirui's interests

and rights in Jupiter Systems.

**JURISDICTION AND VENUE**

6.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345 and 50 U.S.C. § 4565(d)(3).

7.       Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2) because the District of Columbia is the judicial district in which the President issued the subject Order.

**PARTIES**

8.       Plaintiff is the United States of America ("United States").  The Committee on Foreign Investment in the United States ("CFIUS") is an interagency committee authorized to review certain transactions involving foreign investment in the United States to determine the effect of such transactions on the national security of the United States.

9.       Suirui Group is a privately owned Chinese company with its principal place of business in Beijing, China, that develops and provides enterprise-level video communication products and cloud-based communication platforms.

10.      Suirui International is a Hong Kong (Special Administrative Region), China, company and a majority owned subsidiary of Suirui Group that was established in 2020 to effectuate the acquisition of Jupiter Systems.

11.      Jupiter Systems is a Delaware corporation with its principal place of business in Hayward, California.[1]

---

[1] At the time of the acquisition, Jupiter Systems was a Delaware LLC and had one subsidiary, Jupiter Systems China (Hong Kong) Ltd., a Hong Kong (Special Administrative Region), China, holding company that directly wholly owned Jie Xian Tong Computer Systems (Shenzhen) Co., Ltd. (collectively "Jupiter Asia Companies").

**STATUTORY AND REGULATORY BACKGROUND**

12.    The President's authority in the conduct of foreign affairs is at its apex when exercising his power to protect the national security from foreign actors.  *See* U.S. Const., Art. 2, § 2.  This is particularly true "[w]hen the President acts pursuant to an express or implied authorization of Congress."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

13.    The United States is the world's largest recipient of foreign direct investment.  Congressional Research Services, CFIUS (May 29, 2025), https://www.congress.gov/crs-product/IF10177.  But foreign investment in U.S. firms can pose a national security risk by, among other things, opening up critical infrastructure and the means-of-production to foreign control or providing foreign actors access to national defense infrastructure.  *See* 50 U.S.C. § 4565(f).

14.    To address this concern, Congress amended Section 721 of the Defense Production Act of 1950, codified at 50 U.S.C. § 4565, to grant the President broad authority to protect the national security by taking action against "covered transactions" that threaten to impair the national security of the United States and to grant CFIUS authority to review and investigate "covered transactions."  *Id.* § 4565.

15.    A covered transaction includes, but is not limited to, "any merger, acquisition, or takeover . . . by or with any foreign person that could result in foreign control of any United States business."  *Id.* § 4565(a)(4)(B).

**The President's Authority**

16.    Section 4565(d) authorizes the President to "take such action for such time as the President considers appropriate to suspend or prohibit any covered transaction that

threatens to impair the national security of the United States," including by ordering divestment of assets.  *Id.* § 4565(d)(1) & (3).

17.     The President may exercise such authority "only if the President finds that there is credible evidence that leads the President to believe that a foreign person that would acquire an interest in a United States business or its assets as a result of the covered transaction might take action that threatens to impair the national security; and provisions of law, other than [50 U.S.C. § 4565] and the International Emergency Economic Powers Act [50 U.S.C. § 1701 et seq.], do not, in the judgment of the President, provide adequate and appropriate authority to the President to protect the national security in the matter before the President."  *Id.* § 4565(d)(4).

18.     The actions of the President exercised pursuant to subsection (d)(1) to suspend or prohibit a transaction and the findings of the President under subsection (d)(4) that there is credible evidence to believe that a foreign person that would acquire an interest in a U.S. business or its assets as a result of a transaction might take action that threatens to impair the national security "shall not be subject to judicial review."  *Id.* § 4565(e)(1).

19.     "The President may direct the Attorney General of the United States to seek appropriate relief, including divestment relief, in the district court of the United States, in order to implement and enforce," the President's actions made pursuant to Section 4565(d).  *Id.* § 4565(d)(3).

## CFIUS's Authority

20.     CFIUS is an interagency committee established by statute that, among other things, reviews and investigates covered transactions to determine their effects on

the national security of the United States, considers mitigation provisions with the parties

to a transaction to address risks to the national security arising from the transaction,

presents findings and makes recommendations to the President regarding a transaction

under review or investigation, and prescribes regulations implementing Section 4565.  50

U.S.C. § 4565; Exec. Order No. 11,858, 40 Fed. Reg. 20,263 (May 7, 1975), *as amended*

*by* Exec. Order No. 13,456, 73 Fed. Reg. 4677 (Jan. 23, 2008).

21.     CFIUS is chaired by the Secretary of the Treasury and its members

include the Secretaries of Homeland Security, Commerce, War, State, and Energy, the

Attorney General, the United States Trade Representative, the Director of the Office of

Science and Technology Policy, and any heads of any other executive department,

agency or office, as the President determines appropriate.  50 U.S.C. § 4565(k)(2); Exec.

Order No. 11,858, § 3, *as amended by* Exec. Order No. 13,456.

22.     CFIUS's review of a transaction is initiated in one of two ways: (1) a party

to a transaction formally notifies CFIUS through a written notice or declaration of the

transaction and provides information to CFIUS to aid in its review; or (2) a member of

CFIUS initiates a review of a covered transaction about which it has become aware.  50

U.S.C. § 4565(b)(1).

23.     Most reviews are initiated by a notification by the transacting parties prior

to the closing of their transaction because the President's and CFIUS's authority under

Section 4565 is not time-limited, and it is generally less expensive and disruptive for

transacting parties to abandon a transaction prior to completion than to unwind an

already-completed transaction.  *See* 50 U.S.C. § 4565(d)(1) & (3).

24.     When CFIUS becomes aware of a transaction for which it has not received notice and determines that it may be a covered transaction that may raise national security considerations, the Department of the Treasury on behalf of CFIUS may contact the transacting parties to request additional information; and if CFIUS determines the transaction is a covered transaction, CFIUS may request that the parties file a notice.  31 C.F.R. § 800.501(b).

25.     When the transacting parties submit a written notice of transaction, CFIUS may issue and require responses to questions on a specific timeline, and CFIUS may reject a notice if the deadline is missed.  50 U.S.C. § 4565(b)(1)(C); 31 C.F.R. § 800.504(a)(4).

26.     When a review of a covered transaction results in the determination that, among other things, the transaction threatens to impair the national security of the United States and the risk has not been mitigated during or prior to its review, CFIUS "shall immediately conduct an investigation of the effects of the covered transaction on the national security of the United States, and take any necessary actions in connection with the transaction to protect the national security of the United States."  *Id.* § 4565(b)(2)(A)-(B).

27.     At any time during a review or investigation, CFIUS may refer the transaction to the President for action pursuant to Section 4565(d).  *Id.* § 4565(l)(2).

28.     When acting pursuant to Section 4565, the President and CFIUS "may, taking into account the requirements of national security, consider[,]" among other things, "domestic production needed for projected national defense requirements," "the capability and capacity of domestic industries to meet national defense requirements[,]"

"the control of domestic industries and commercial activity by foreign citizens as it

affects the capability and capacity of the United States to meet the requirements of

national security[,]" and "the potential national security-related effects on United States

critical technologies[.]" *Id.* § 4565(f).

29.    The President has fifteen days following such a referral to announce the

decision on whether or not to take action with regard to the covered transaction.  *Id.*

§ 4565(d)(2).

## FACTUAL BACKGROUND

30.    On February 28, 2020, Suirui International directly acquired all of the

equity interests of Jupiter Systems.[2]  Suirui and Jupiter Systems did not submit a written

notice of transaction with CFIUS at the time of the transaction.

31.    In March 2024, CFIUS requested that Suirui and Jupiter Systems submit a

written notice to CFIUS of Suirui's acquisition of Jupiter Systems ("the Transaction").

Suirui and Jupiter did so in October 2024.

32.    In December 2024, CFIUS identified national security risks arising from

the Transaction related to the potential compromise of Jupiter Systems' products that are

integrated into military and critical infrastructure systems, which could enable

unauthorized access to data or disablement of critical systems.

---

[2] In the years following the transaction but before CFIUS's involvement in March 2024,
Suirui transferred a combined 5.4 percent of Jupiter Systems' shares to its former CEO
and 1.2 percent of Jupiter Systems' shares to Europa Partners, LLC.  These shares are not
subject to the President's Order.

33.     CFIUS subsequently attempted to negotiate with Defendants measures to address the identified national security risks arising from the Transaction, but Defendants did not meaningfully engage and then rejected the measures proposed by CFIUS.

34.     In January 2025, CFIUS rejected the previously submitted Joint Voluntary Notice because Defendants responded late to CFIUS's requests for follow-up information.  Thereafter, Defendants refused to refile a notice and stopped engaging with CFIUS.

35.     On April 7, 2025, the Department of the Treasury initiated a formal CFIUS review of the Transaction after CFIUS determined that the Transaction continued to pose national security risks and that the Transaction needed to be under review so that CFIUS could continue to discuss with Defendants measures to address the national security risks.

36.     During that review, CFIUS determined that mitigation short of abandonment was no longer sufficient to address the identified national security risks from the Transaction and communicated to Defendants that CFIUS was willing to discuss terms of a voluntary abandonment with them.  CFIUS shared terms with Defendants, but Defendants were ultimately unwilling to voluntarily abandon the Transaction.

## The Order

37.     On July 8, 2025, the President signed an order finding that "there is credible evidence that leads [him] to believe that [Suirui] . . . through the acquisition by Suirui International of all of the interests in Jupiter Systems . . . might take action that threatens to impair the national security of the United States."  90 Fed. Reg. 31,125 §§ 1(a).

38.     The Order provides that "[t]he Transaction is hereby prohibited, and ownership by the Purchasers of any interest in Jupiter or its assets (other than those assets identified as excepted . . .), whether effected directly or indirectly through the Purchasers, or through the Purchasers' partners, subsidiaries, affiliates, or foreign person shareholders . . . is also prohibited." *Id.* § 2(a).

39.      The Order requires Suirui to divest, and to ensure that its affiliates divest, within 120 days after the date of the Order unless an extension is granted by CFIUS, all equity and assets, both tangible and intangible, in Jupiter Systems, wherever located. *Id.* § 2(b).

40.     The Order also requires that Jupiter Systems "holds no interest or rights in any assets or operations of the Jupiter Asia Companies acquired or created after the completion of the Transaction . . . unless otherwise approved by CFIUS." *Id.*

41.     The Order authorizes CFIUS, "without limitation on the exercise of authority by any agency under other provisions of law, . . . to implement measures it deems necessary and appropriate to verify and enforce compliance with the Order and any conditions imposed by CFIUS" on Defendants. *Id.* § 2(i).

42.     The Order also authorizes the Attorney General to take any steps pursuant to Section 4565(d)(3) necessary to enforce the order. *Id.* § 2(m).

## Defendants' Failure to Comply with the Order

43.     Since the issuance of the Order, the Departments of War and the Treasury have engaged with Suirui and Jupiter Systems, including through weekly meetings and an in-person site visit to Jupiter Systems' facility in California, to remain apprised of

Suirui's divestment efforts and to ensure that Suirui does not access Jupiter Systems'

sensitive assets.

44.    On September 23, 2025, Suirui requested a 90-day extension of the

divestment deadline.  Determining that it was desirable to continue facilitating a

divestment without litigation, the Departments of War and the Treasury granted a 60-day

extension to allow Suirui to make progress toward divestment.

45.    On January 2, 2026, after receiving a second extension request from

Defendants, the Departments of War and the Treasury extended the divestment deadline

to February 3, 2026, with the caveat that further extensions would only be contemplated

if, by January 20, 2026, Suirui provided, to the Federal Government, a term sheet

reflecting comprehensive terms for a transaction that would fulfill the terms of the Order.

46.    Suirui failed to meet the January 20, 2026, deadline.

47.    It also failed to meet the February 3, 2026, divestment deadline.

48.    As of this filing, Suirui continues to hold equity in and assets of Jupiter

Systems, and Jupiter Systems continues to hold interest and rights in assets or operations

of the Jupiter Asia Companies.

## CLAIM FOR RELIEF

49.    All preceding paragraphs are incorporated by reference, as if fully set forth

herein.

50.    Pursuant to Section 4565(d), the President determined that: (1)

Defendants, through the acquisition of Jupiter Systems, might take action that threatens to

impair the national security of the United States; and (2) provisions of law, other than

Section 721 and the International Emergency Economic Powers Act, do not, in his

judgment, provide adequate and appropriate authority for him to protect the national

security.

51.     The President ordered the following actions, among other things, pursuant

to Section 4565(d): (1) that the transaction be prohibited; (2) that Suirui and its affiliates

divest all equity and assets, both tangible and intangible, in Jupiter Systems within 120

days of the Order; (3) that Jupiter Systems hold no interest or rights in the assets or

operations of the Jupiter Asia Companies acquired or created after completion of the

Transaction; and (4) that, upon divestment, Suirui and Jupiter Systems certify to CFIUS

their compliance with the Order.

52.     Jupiter Systems continues to be a subsidiary of and owned and controlled

by Suirui, and Suirui has not divested all equity and assets, both tangible and intangible,

in Jupiter Systems.

53.     Jupiter Systems continues to hold interests or rights in the assets or

operations of the Jupiter Asia Companies acquired or created after the completion of the

Transaction.

54.     Defendants therefore are in violation of the President's Order.

55.     The national security interests of the United States are thereby harmed.

56.     By statute, the Department of Justice is entitled to seek an order in district

court enforcing the President's Order.  50 U.S.C. § 4565(d)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, the United States of America respectfully requests that the Court

award the following relief:

A.      Declare that Defendants have failed to comply with the President's July 8, 2025 Order and 50 U.S.C. § 4565;

B.      Enjoin Suirui from owning or controlling equity and assets in Jupiter Systems as set out in the President's July 8, 2025 Order;

C.      Enjoin Jupiter Systems from being owned or controlled by Suirui as set out in the President's July 8, 2025 Order;

57.     Enjoin Jupiter Systems from holding interests or rights in the assets or operations of the Jupiter Asia Companies acquired or created after the completion of the Transaction as set out in the President's July 8, 2025 Order;

D.      Issue an Order directing Suirui to divest itself of Jupiter Systems' equity and assets as set out in the President's July 8, 2025 Order;

E.      Issue an Order transferring the equity and assets of Jupiter Systems held by Suirui to a third-party fiduciary pending a transaction involving all such equity and assets that complies with the President's July 8, 2025 Order; and

F.      Award the United States its costs and such other relief as the Court deems equitable and just.


Dated:  February 9, 2026                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General

                                            ALEXANDER K. HAAS
                                            Director
                                            Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Samuel Bean*

Samuel Bean (D.C. Bar 90042303)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: Samuel.B.Bean2@usdoj.gov

*Counsel for Plaintiff*