**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

SUIRUI GROUP CO., LTD, *et al.,*

*Defendants.*

Civil Action No.: 26-0369 (AHA)

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S REQUEST FOR EXPEDITED HEARING**

Plaintiff has not come close to carrying its burden to show that "expedition [is] essential." LCvR 65.1(d). To the contrary, Plaintiff's request rests on conjecture. Plaintiff speculates that, absent expedited relief, the United States "could" face harm. Request for Expedited Hearing at 1 (ECF No. 6-3).[1] That speculation is a far cry from identifying "facts which make expedition essential." LCvR 65.1(d).

Plaintiff has requested a hearing on its preliminary injunction motion "no later than 21 days after" it filed that motion on February 18, 2026, ECF No. 6-3, at 1—which means Plaintiff wants a hearing on or before March 11, 2026. Defendants' response to the motion would have to be filed well before the hearing date. Plaintiff's request for expedition should be denied for several reasons.

---

[1] Plaintiff piles speculation on top of speculation. *See* Mot. for Prelim. Inj. at 14 (ECF No. 6) ("Suirui's control of Jupiter Systems *could* allow Suirui or somebody else it authorizes to introduce hardware or software vulnerabilities into Jupiter Systems' products that, in turn, *could* allow a nefarious actor to access military and intelligence data and *potentially* disrupt, compromise, or even disable government operations.") (emphases added).

### 1.    Plaintiff's slow process belies its sudden claim of urgency.

Plaintiff has had weeks, if not longer, to prepare its preliminary injunction motion, and its haste to schedule a hearing is inconsistent with the slow pace of its process to date.

Plaintiff seeks to unwind a transaction that occurred six years ago, in February 2020. *See* Compl. ¶ 30 (ECF No. 1). Plaintiff alleges that "CFIUS identified national security risks arising from the Transaction" in December 2024—more than a year ago. *Id.* ¶ 32. In April 2025, CFIUS determined the transaction allegedly continued to pose risks. *Id.* ¶ 35. The President issued his divestiture order on July 8, 2025. *Id.* ¶ 37. In the seven months since, the parties have engaged in weekly meetings and in-person visits to discuss Jupiter Systems' operations. *Id.* ¶ 43. The Government granted Defendants two extensions of time, totaling 90 days, to divest. Defendants were continuing to negotiate in good faith when this lawsuit was filed.

Plaintiff did not file suit until February 9, 2026, six years after the transaction and more than a year after CFIUS identified alleged security concerns in late 2024. And even then, Plaintiff waited an additional nine days after it filed its complaint before seeking preliminary relief. *See* Mot. for Prelim. Inj. (ECF No. 6). That unhurried chronology speaks volumes. A party that truly believes urgent relief is "essential" does not wait years to act or grant multiple extensions of time. Plaintiff's own timeline undermines any claim of immediate necessity. The fact that the

Government has now decided to litigate does not mean there is an urgency about this matter that did not exist for the past six years.[2]

### 2.    Expedition would substantially prejudice Defendants.

Forcing Defendants to fully litigate Plaintiff's preliminary injunction motion in 21 days (from February 18) would materially and unfairly impair Defendants' ability to present a proper opposition to Plaintiff's motion.

Counsel for Defendants were retained only three days ago, on February 20, 2026. Plaintiff's motion implicates a multi-year course of conduct that requires investigation, document review, and careful factual development. Counsel's ability to confer with key personnel is further complicated by the fact that several Defendants reside in China, where Defendants' business operations are presently closed in connection with the Lunar New Year celebrations, which last through March 3, 2026. *See* Decl. of Tingkang Xia ¶¶ 4–6 (Ex. A). These practical realities weigh heavily against expedition.

Under these circumstances, it would be inequitable to require Defendants to respond on an artificially compressed schedule. *See FTC v. Atl. Richfield Co.*, No. 90-

---

[2] Plaintiff's sudden demand for urgency is also undermined by its actions in other circumstances. For instance, despite identifying allegedly urgent national security concerns presented by TikTok, Inc.'s operations, the government repeatedly extended its divestiture deadline. *See*, *e.g.*, Application of Protecting Americans from Foreign Adversary Controlled Applications Act to TikTok, 90 Fed. Reg. 8,611 (Jan. 30, 2025); Executive Order No. 14350, Further Extending the TikTok Enforcement Delay, 90 Fed. Reg. 45,903 (Sep. 23, 2025); Executive Order No. 14310, Further Extending the TikTok Enforcement Delay, 90 Fed. Reg. 26,913 (June 24, 2025); Executive Order No. 14258, Extending the TikTok Enforcement Delay, 90 Fed. Reg. 15,209 (Apr. 9, 2025); Executive Order No. 14,352, Saving TikTok While Protecting National Security, 90 Fed. Reg. 47,219 (Sep. 30, 2025).

cv-1657, 1910 WL 117290, at *1 (D.D.C. Aug. 3, 1990) (holding that it "would be unreasonable" to "order defendants to immediately counter the Government's extensive allegations" through expedited proceedings where the FTC's "motion for preliminary injunction concerns complex factual and legal issues which the FTC has had ten months to consider and develop").

### 3. Defendants seek fair process, not delay.

Defendants do not seek unnecessary delay, and they are prepared to proceed promptly toward resolution of Plaintiff's motion on a reasonable briefing and hearing schedule.[3] But Defendants must still have sufficient time to prepare their defense.

That is especially true here because Plaintiff seeks a mandatory injunction— not merely preserving the status quo, but altering it. Plaintiff asks the Court to install an unidentified receiver into Defendants' corporate operations, for an undefined period, and with undefined authority. Plaintiff does not provide the Court or Defendants with any idea of who the receiver may be, suggesting instead that Plaintiff will identify a proposed receiver "prior to argument on this matter." Mot. for Prelim. Inj. at 16 n.2 (ECF No. 6). More troubling, Plaintiff does not even attempt to identify what scope of authority this receiver will possess. Defendants and the Court are left to guess, which will require significant time to address.

---

[3] In fact, Plaintiff's motion for a preliminary injunction falls so far short of satisfying the requisite standards that the Court may conclude that it can deny the motion on the papers for want of proof of imminent injury. *See Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) ("When a party seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that she is entitled to relief or that extreme or very serious damage will result.").

Through this request, Plaintiff seeks an extraordinary remedy that would significantly disrupt Defendants' businesses. *See N.Y. Cmty. Bank v. Sherman Ave. Assocs., LLC*, 786 F. Supp. 2d 171, 175 (D.D.C. 2011) (appointment of a receiver "is an extraordinary equitable remedy" that is "only justified in extreme situations") (cleaned up). Before such relief is considered, Defendants should be afforded a full and fair opportunity to marshal the facts and develop their defenses.

### 4.    Defendants should be allowed the opportunity for limited discovery before the preliminary injunction hearing.

Holding a hearing on Plaintiff's preliminary injunction motion by March 11 is also impractical because Defendants should have an opportunity to engage in limited discovery before the hearing. As a matter of constitutional due process, Defendants are entitled to access the unclassified evidence the President relied on in issuing his order of divestiture. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014). Plaintiff should produce all this evidence without delay, even though CFIUS may have previously provided Defendants with a summary in letter form. After the evidence has been reviewed, Defendants may want to depose Plaintiff's declarant, Mr. Pilkerton (ECF No. 6-1), before they respond to Plaintiff's preliminary injunction motion. *See Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-139-WTL-MJD, 2017 WL 3498606, at *4 (S.D. Ind. Aug. 16, 2017) ("A Defendant's desire to depose the Plaintiff and conduct other discovery prior to responding to a motion for preliminary injunction is unremarkable."). Granting Plaintiff's request for a hearing just over two weeks from today would not allow adequate time for Defendants to seek appropriate and targeted discovery before they must respond to Plaintiff's motion.

\*     \*     \*

Because Plaintiff has failed to demonstrate that expedition is "essential," LCvR 65.1(d), and because its proposed expedited schedule would cause concrete prejudice to Defendants, the Court should deny Plaintiff's request for an expedited hearing and should instead enter the order Defendants have proposed in the contemporaneously filed joint status report.

February 23, 2026

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
D.C. Bar No. 453423
Brian J. Field
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

Tingkang Xia^
Peter D. Leary^
Matthew J. Berns\*
Troutman Pepper Locke LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308

^ *Pro hac vice* applications pending

\* *Pro hac vice* application forthcoming

*Counsel for Defendants*